Estate of George F. Fiske, Clark P. Fiske and M. E. Turner, Trustees v. Commissioner.
Estate of George F. Fiske v. Commissioner
Docket No. 4106.
United States Tax Court
1946 Tax Ct. Memo LEXIS 286; 5 T.C.M. (CCH) 42; T.C.M. (RIA) 46020; January 21, 1946
*286 Chase Morsey, Esq., for the petitioner. Gene W. Reardon, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of an estate tax deficiency of $9,402.93. The question involved is whether corpora of trusts created by decedent are includible in his gross estate by reason of a possibility of reverter; or by reason of his retained rights to determine the character of trust income as income or principal and thus prefer the respective remaindermen over the income beneficiary. The case was submitted upon a stipulation of facts and evidence adduced at the hearing. Those facts hereinafter appearing which are not stipulated are facts otherwise found from the record. Findings of Fact The stipulated facts are hereby found accordingly: Prior to the death of George F. Fiske (hereafter sometimes referred to as decedent) on May 2, 1940, at the age of 77 years, he resided in Kirkwood, Missouri. The estate tax return for decedent's estate was filed June 28, 1941, with the collector of internal revenue for the first Missouri district at St. Louis. On November 28, 1939, decedent *287 created five trust estates, by one indenture, transferring to himself and M. E. Turner as trustees, shares of common stock of the American Stove Company. The five primary beneficiaries named in the trust indenture were Clark P. Fiske, son of decedent, born May 6, 1901; Katherine Atwood Fiske, wife of Clark, born July 9, 1901; George Proctor Fiske, son of Clark and Katherine, born August 19, 1929; Mary Katherine Fiske, daughter of Clark and Katherine, born January 15, 1933; and Esther R. Fiske, widow of a deceased son of decedent, born October 2, 1889. The trust provided, inter alia, that the income from each trust was to be paid to the respective beneficiaries for life with remainder over to the other trusts; and ultimately to the heirs of the named grandchildren provided for in the trust instrument; that the trustees could invest the trust funds in whatever manner they thought reasonable; that the trustees were "to determine whether any money or other assets received in said trust estate shall be considered part of the principal of said trust estate or part of the income thereof or shall be apportioned between principal and income of said trust estate and the manner and extent of *288 such apportionment, and, except as otherwise herein elsewhere directed, to determine whether any expenditure from said trust estate should be charged to the principal or income * * *, provided, however, that the Trustees shall not out of income" amortize premium or discount in connection with the acquisition of trust corpus; that the trustees were authorized "to vote in person or by proxy any or all of the shares of stock that may at any time belong to said trust estate at corporate meetings and for all corporate purposes"; that individual trustees were to have the right to treat with the estate as owners as they deemed best in the interests of the beneficiaries. Item Two of the trust, providing for the payment of the income to Katherine Atwood Fiske for her life, empowers the trustees to invade the corpus for distribution to the primary beneficiaries. It reads in part as follows: If at any time or from time to time it shall appear to the satisfaction of the Trustees that Katherine Atwood Fiske shall be in need of funds in excess of the net income, if any, which may be then available for her from this trust estate and from any other source or sources of which the Trustees have *289 knowledge and that such funds are needed in order to defray expenses of Katherine Atwood Fiske occasioned by her illness, infirmity or disability, either mental or physical, or in order to defray expenses of Katherine Atwood Fiske occasioned by the attendance of any child or children of Katherine Atwood Fiske in any preparatory school or any college, university or other institution of advanced learning or in order that Katherine Atwood Fiske may live in a manner consistent in the opinion of the Trustees with her accustomed standard of living, her probable future needs and estimated future income, then the Trustees may relieve in whole or in part any such need or needs of Katherine Atwood Fiske by paying to her or using and applying for her benefit or by loaning to her such sum or sums of the principal of this trust estate as the Trustees deem reasonable and proper under the circumstances. Each loan, if any, under the foregoing provisions hereof to Katherine Atwood Fiske shall be evidenced by an unsecured note executed by Katherine Atwood Fiske, which note shall bear interest from date thereof at the rate of three (3%) percent per annum, shall mature at such time as Katherine Atwood *290 Fiske and the Trustees shall determine, and shall provide that upon the maturity thereof Katherine Atwood Fiske may renew the same from time to time as often as she desires to exercise said privilege. Upon the maturity of any such note held hereunder the Trustees shall, subject to the privilege of renewal thereof, endeavor by such means as they deem advisable to effect repayment of the loan represented thereby from Katherine Atwood Fiske or from her estate in the event of her death. The Trustees shall not be responsible for any loss which may accrue to this trust estate as a result of any loan to Katherine Atwood Fiske as above provided. The Trustees in considering whether or not to make any disbursement or loan under the foregoing provisions of this paragraph to or for the benefit of Katherine Atwood Fiske shall give primary consideration to the welfare of Katherine Atwood Fiske and not to the conservation of this trust estate for persons having remainder inerests therein. The decision of the Trustees as to the advisability and amount of any disbursement or loan under this paragraph and as to the manner of making or applying any such disbursement shall be conclusive and binding upon *291 all parties in interest. Similar powers are given the trustees over the other four trust estates. The trust indenture further provided that although decedent was a co-trustee, if disagreement arose between him and the other trustee the decision of decedent should prevail and be as effective as though concurred in by the other trustee. After the death of decedent Clark Fiske succeeded him as trustee; at no time since the creation of the trusts to the date of decedent's death have the trustees ever encroached upon the principal. The trusts were not created in contemplation of death. The grantor did not expressly reserve any power to alter, amend, revoke or terminate any of the trusts. The trust estates were administered by the trustees in accordance with the terms and provisions of the trusts. Clark Fiske is assistant secretary treasurer of the American Stove Company and has been for a number of years last past; his salary and other compensation for the year 1938 was $7,940.74. beginning with the year 1939 George Proctor Fiske and Mary Katherine Fiske attended private schools, the expenses of which were paid by Clark Fiske. The expenses of the children increased as they *292 became older. During the years in question those situations permitting an invasion of trust principal under the above-quoted Item Two of the trust did not exist or occur. The income of the beneficiaries substantially exceeded their needs for their accustomed standard of living. The total amount of the trust corpora, which respondent contends should be included in the gross estate, is $61,000, consisting of 5,000 shares of stock of American Stove Company of the value of $12 per share, and $1,000 in cash, which represents a dividend on said stock paid on May 1, 1940, the day before the death of decedent. This cash was in the possession of the trustees and had not been distributed to the beneficiaries. Opinion The mere possibility of reverter said by respondent to exist in this case does not justify the inclusion of any of the trust corpus of the several trusts in decedent's estate. ; . [1]
Nor can such inclusion be supported under 811 (d) as *293 subject to change through the exercise of a power retained by decedent by reason of the provisions of the trusts, which permit an invasion of corpus upon the happening of contingencies which the facts show never occurred and were not likely to occur. , affirmed (C.C.A., 2nd Cir.), on opinion below, ; ; . The standards by which possibility of invasion were to be judged were fixed and their operation was reasonably ascertainable. Decedent retained no potential interest for himself such as was held to constitute a transfer intended to take effect in possession or enjoyment at or after death within the principle of such cases as , affirmed (C.C.A., 9th Cir.), (Nov. 16, 1945), and (Nov. 13, 1945). Decedent's right, under the terms of the trust, to designate whether money or assets received by the trust were to *294 be considered principal or income was a limited managerial power and could not give decedent the arbitrary power for which respondent contends. Scott on Trusts, Vol. 2, § 233.5; and see ; , . Decision will be entered for the petitioner. Footnotes
1. Both of which, together with many similar cases, were recently acquiesced in by respondent. No. 21, I.R.B. (Nov. 12, 1945), p. 1.↩